The State *v.* Cole.

13L 367
14L 7

THE STATE *ex rel. v.* E. A. COLE.

1. CLERKS. *Where one court is abolished and another established.* Where an existing court is abolished, and another court is established over the same territory and with like jurisdiction, and the business of the former is by the statute transferred to the latter, the latter becomes the legal successor of the former, and its officers are entitled to the possession of the books, papers and effects of its predecessor; and so, as often as changes occur.

2. SAME. *Sureties upon bond.* If a clerk becomes his own successor having money in his hands, either as clerk or special commissioner and receiver, the old sureties will be released and the new sureties become liable therefor, and the presumption, in the absence of proof to the contrary is that the money is on hand, and this presumption can only be removed by positive proof to the contrary, or at any rate by the production of the best evidence. The mere fact that the clerk's account in bank was overdrawn at the time is not sufficient, when the proof is clear that there was no defalcation during the first term.

3. SAME. *Same.* Under the provisions of the Code a clerk, who is his own successor, would hold the funds in his hands in the same capacity in which he held them before, either as clerk or special commissioner, and his sureties would be liable accordingly. It would be the same if a succeeding clerk receive funds from his predecessor

4. INTEREST. *Decree of official bond. Appeal.* A money decree of the chancery court, although for the full penalty of an official bond, will carry interest upon affirmance, whichever party appeals.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

—— —— for complainant.

—— —— for defendant.

COOPER, J., delivered the opinion of the court.

By the act of 1870, chapter 28, the chancery court of Memphis was abolished, and its business transferred, in equal proportions, to two chancery courts created for the same district by the names of the first and second chancery courts of Shelby county, Under this act, on June 14, 1870, the defendant. E. A. Cole, was appointed and qualified as clerk and master of the first chancery court of Shelby county, for the constitutional term of six years. By the act of 1875, ch. 23, sec. 2, the second chancery court of Shelby county was abolished, and its business transferred to the first chancery court of Shelby county, which was directed to be thereafter styled the chancery court of Shelby county. On June 23, 1876, the defendant, Cole, was reappointed clerk and master of the chancery court of Shelby county, and qualified by giving three bonds, as required by law. His co-defendants are his sureties on his office bond and on his bond as special commissioner and receiver. The third bond given to cover public revenue which might come to his hands is not in controversy. In November, 1878, Cole resigned the office of clerk and master, and the relator, R. J. Black, was appointed and qualified as his successor. On December 6, 1878, the court made an order upon Cole to pay over to his successor all moneys in his hands by virtue of his late office, and Cole acknowledged service of a copy of the order on the next day. This bill was filed six days thereafter against Cole and the sureties on

The State *v.* Cole.

his office bond and bond as special commissioner and receiver, given upon his reappointment as aforesaid, to recover any money for which they had become liable. Cole had previously made an assignment to the relator, Black, of his fees of office to indemnify his sureties against loss by reason of their surety-ship. One object of the bill was to claim the benefit of this assignment for the creditors who were entitled to a recovery against Cole as an official defaulter. Cole made no defense to the bill, and the sureties raised no issue by their answers except as to the extent of their liability. Upon a reference to a commissioner to state an account with the defendant, Cole, it was ascertained and reported that he was a defaulter to a larger amount than the combined penalties of both of the bonds sued on. The report also showed in detail the various items of liability, distinguishing those derived from sales of property or which came to Cole's hands as receiver proper, and the dates of collection whether before or after his last appointment. No exceptions were filed to the report either as to the amount of the items of liability, the dates of reception, or the sources from which they were derived. The only contest was made by the sureties as to the extent with which they should be charged with these items on the bond given by Cole as special commissioner and receiver. It was and is conceded, that the amounts properly chargeable to the account of the office bond will exceed the penalty of that bond. The only contest is over the liability of the sureties upon the other bond. The

chancellor gave a decree against Cole for the whole
amount reported, and against the sureties for the pen-
alty of the other bond, giving the sureties a prefer-
ence under Cole's assignment of his fees for their
indemnity, any surplus to be applied to the payment
of the creditors. The complainant has brought the
case up by a general appeal, and the sureties by a
writ of error. The Referees have reported that the
sureties should be charged with several items upon
the bond as special commissioner and receiver, in ad-
dition to those charged by the chancellor, and the
sureties have excepted.

The contest of the sureties is over the following
items, with which the Referees have reported that they
should be charged upon the bond of Cole as special
commissioner and receiver, viz:

First, Amount received by Cole during his first term of office,
being the proceeds of sales of property made by [him
during that term..................................................................$7,210 62:

Second, Amounts received by Cole during his second term
of office from the following sources:

Proceeds of sales made by A. Alston as clerk and master,
etc., of the chancery court of Memphis..........................$ 939 45

Proceeds of sales made by M. D. S. Stewart as clerk and mas-
ter of the second chancery court of Shelby county........ 438 81

Proceeds of sales made by Cole himself during his first term 6,475 09

One objection made to all of these items, although
not much pressed, is that the sureties on the bonds,
under the last appointment of Cole as clerk and mas-
ter, can only be held liable upon the ground that
Cole was his own successor, and also the successors
of Alston and Stewart, whereas he was, under his
first appointment, as well as the other officers named

respectively, clerk of a different court from the court under which he was last appointed. The position is based upon the fact that Alston was clerk of the chancery court of Memphis, Stewart of the second chancery court of Shelby county, and Cole, during his first term, of the first chancery court of Shelby county, while under the last appointment Cole was clerk of the chancery court of Shelby county. The last change by the act of 1875 was, as we have seen, merely in name, and the other changes, although in form more, were in substance the same. Each of these several courts was for the same chancery district, and possessed precisely the same jurisdiction, namely all the equity jurisdiction of the chancery courts of the State for the particular territory. The pre-existing court was abolished, and the new courts or court took, by express transfer, all the pending business of its predecessors. There was only a change of names and officials, not of jurisdiction or business. Each following court was in legal effect the successor of that which went before, and its officers were entitled to the possession and control of the books, papers and effects of its predecessor, and to enforce their delivery either summarily under the statute, Code, sec. 806, et seq., or otherwise. The Legislation making these changes fairly implies, even where it is not so expressed in words, that the new court and its officers were the successors of the pre-existing court and its officers.

It is next insisted as to the first of the above named items that the defendant sureties are not liable

therefor, because the proof shows that no part of the money was on hand at the date of the execution of the bonds under the re-appointment of June 23, 1876. It is conceded that, under our decisions, if a clerk pay over money in his hands to his successor in office the liability of the first for such money is ended, and the latter becomes bound; and, in analogy, that if the clerk becomes his own successor, having the money on hand, the old sureties will be released and the new sureties become liable. And the presumption, in the absence of proof to the contrary, is that the money is in hand at the commencement of the second term: *Yoakley* v. *King*, 10 Lea, 67, 72; *Bowen* v. *Evans*, 1 Lea, 107; *Smalling* v. *King*, 5 Lea, 585. The proof in this case shows that there was no official default by Cole during his first term. The witness, Black, who was Cole's clerk from his first appointment until he went out of office, and kept his books and financial accounts generally, but did not control his bank account or deposits, testifies that after 1872, Cole kept his accounts with various banks, naming them. "But," he adds, "on June 23, 1876, when he was re-appointed clerk and master, he was keeping his book account alone, I· think, with the Fourth National Bank of Memphis. On that day his account was overdrawn to the amount of $1,781.29. After that time he kept his account solely with the Fourth National Bank, and continued to do so until the day I left the office, August 1, 1878. The above statement is made from my knowledge of his business at the office, and not as to private business out-

The State *v.* Cole.

side of the office. He may have had other accounts independent of those as clerk and master. I only have reference to those I was conversant with." This is the only evidence to rebut the presumption that the money was on hand at the commencement of the second term. All that can be said of it is that it states a fact from which an inference may be drawn in favor of the contention. But we do not think the rights of creditors should be made to depend upon inference. If they were to sue the first set of sureties, those sureties might prove by Cole that the money was on hand at that time, and thus deprive the creditors of all remedy. It was incumbent upon the present sureties to introduce the best evidence of the fact in controversy, or at any rate satisfy the court that it was not their fault that the best evidence was not produced. The objection is, therefore, not well taken.

A more difficult question, in view of one of our decisions, is whether the items in controversy as above specified are chargeable to the sureties upon the bond of the principal as special commissioner and receiver, or on the office bond. The office bond is in the penalty of $10,000, conditioned to safely keep the records of the court, and faithfully discharge the duties of his office." The other bond is in the penalty of $30,000, and conditioned to "faithfully account for all property and funds which may at any time come into his hands as special commissioner or receiver, and shall truly and faithfully deliver and pay over such property and funds to the persons who

may be entitled to the same." To intelligently dispose of the questions made in argument, it will be necessary to review our legislation and decisions on the subject.

By the act of 1794, ch. 1, which antedates the formation of our State government, clerks of court were required to give bond "for the safe keeping of the records and the faithful discharge of the duties of his office." In this state of the law, and with only such a bond, a clerk and master of the chancery court was authorized by order of the court to receive certain money, and by the same order was appointed receiver and directed to loan the money at interest. The clerk received the money, but failed to loan it. This court held that he and his sureties on his official bond were liable for the money, because it did not appear that he had done any act as receiver: *Waters* v. *Carroll*, 9 Yer., 102. It was said by Judge Reese, in delivering the opinion of the court, that in England a receiver is an indifferent third person appointed by the court to receive the rents of lands pending litigation, who is usually selected by the master, before whom he passes his accounts, and is ordinarily required to give security. "In the constitution of our courts of chancery," he said, "we have united the office and duties of master, so far as they exist under our system, with those of clerk; but no statute has been passed to annex the office and duties of receiver to those of clerk and master." He then notices the existence of a practice in our chancery courts of sometimes appointing the

clerk and master a receiver in those cases in which it was supposed the latter office would least interfere with the proper discharge of his other duties, owing to the limited number of persons qualified to act as receivers, and suggested the advisability of discontinuing the practice.

The practice was, however, not discontinued, and the Legislature afterwards passed the act of 1849, ch. 150. By the first section of this Act, the clerks of the circuit, chancery and supreme court, and their sureties upon the bond given under the act of 1794, were made liable under the bond for all money that may come into their hands by virtue of their appointment by the court as special commissioners to sell property, or as receivers. The second section made it the duty of the judges of those courts to require the clerk to execute a bond in such sum as the judge may deem sufficient, conditioned for the faithful accounting for and paying over of all such sums as may come into their hands as such special commissioners. In *Williams* v. *Bowman,* 3 Head, 679, the liability of a clerk of the circuit court was considered, who had given bond as required by the second section of the act, and who had sold property by order of the court and retained and collected the notes after he went out of office. The court held that the act did in some sense annex the office of special commissioner and receiver to that of clerk, but not so as to merge the former in the latter, and that the duration of the appointment of special commissioner not being limited by law, it might con-

tinue beyond the term of the office of clerk if a
successor be not appointed by the court.    The clerk
and his sureties were therefore held liable upon the
bond as commissioner, for the money collected.    The
correctness of this ruling is recognized in *Horton* v.
*Cope,* 6 Lea, 155, 159, and *Yoakley* v. *King,* 10 Lea,
67, 73.

The act of 1852, ch. 164, required all clerks of
court to give a special bond to faithfully account
for and pay over as the law directs all money which
may come to their hands by the sale of property
under orders of the court.    By section 3, the court
might declare the office vacant if the clerk refused
to give the bond.    In the *State ex rel.* v. *Blakemore,*
7 Heis., 638, 654, the learned Judge who delivers
the opinion of the majority of the court, says that
the office of commissioner is by this act made a part
of the office of clerk, but the requirement of a spe-
cial bond must be taken as a merger of all liability
under the bond of office for his duties as commis-
sioner into the new bond.    And yet, curiously enough,
he held the clerk and his sureties liable on his bond
of office, which covenanted for the faithful discharge
of his duties as clerk and master, "for the proceeds
of sales made by his predecessor which fell into his
hands upon succeeding to the office, and for all moneys
that came into his hands otherwise than by sales
made by him, and for any moneys which, though
they came into his hands as commissioner, were nev-
ertheless retained under the orders of the court, and

converted into a trust fund, and which he failed to account for." The bond executed in this case as a commissioner was conditioned "to well and truly pay over and account for all moneys that shall or may come to his hands upon sales of property *made by him* under the orders and decrees of said chancery court." The limitation of the liability to the proceeds of such sales as were made by the clerk himself compelled the court, if it would not leave suitors without redress, to include every other liability under the bond of office. This might well have been under the first section of the act of 1849, the clerk having failed to give a proper commissioner's bond, but the learned judge considers that act repealed by the act of 1852. The rationale of the decision is left in grave doubt. The real question in the case, which overshadowed every other, and upon which the judges differed, was whether the sureties could claim credit for the payments made by one of them, the father of the clerk, without special reference to the bond.

The Code provides, section 320, that each court shall have a clerk "whose duty it is to attend the court, and perform all clerical functions thereof." By section 326 every clerk is required to give bond "for the safekeeping of the records, and for the faithful discharge of the duties of his office;" and by section 327, also a bond "to account for and pay over all moneys arising from taxes on suits, fines and forfeitures;" and by section 328, a bond also "to cover property or funds which may, at any time, come to

the hand of such clerks as special commissioners or receivers by appointment of the court, or any judge thereof." By section 329, it is provided that in the absence of such special bond the clerk and his sureties will be liable on the regular official bond for all property or money with which such clerk may be properly chargeable as special commissioner or receiver, and the failure to execute a special bond shall not subject the clerk to any penalty. By section 330 the court is authorized to require special bonds to meet particular exigencies. Section 335 is: "The official bonds of clerks, executed under the provisions of the Code, are obligatory on the principal and sureties for every wrongful act or failure of duty in his official capacity, whether the act or duty is embraced in the condition of the bond or not, or grows out of a law passed subsequently to its execution." See also sections 771 *et seq.*, for other provisions regulating the obligation of official bonds. Section 805 is: "In all cases in which it is not otherwise expressly provided, when any office is vacated, all books, papers, property and money belonging or appertaining to such office, shall, on demand, be delivered over to the qualified successor." The subsequent sections provide a summary remedy for enforcing such delivery. These provisions, it will be noticed, are applicable to all clerks of court.

These provisions plainly show a legislative intent that clerks of court, in addition to what the Code, sec. 320, denominates the "clerical functions" of the office, may be appointed to perform, and may per-

form the duties of a special commissioner or receiver. They also provide for the protection of suitors who may be aggrieved by the action of the clerk in any of these capacities. They further show that these latter duties should be so far annexed to the office as to pass to the successor in office, for the obvious reason that the suitors might look to the office, and not be compelled to follow the individual after his term has expired. In all of our cases subsequent to the Code, and cited above, it has been taken for granted that the successor in office, whether the clerk himself or a third person, and his sureties would be liable for moneys received from the predecessor. I was of opinion in the first of these cases, *Bowen* v. *Evans*, 1 Lea, 107, that the sureties of the clerk on his first bond, who is his own successor, would be liable for funds received as commissioner or receiver, until the court took some action to transfer the duty to the successor. But a majority of my brother judges thought that the liability of the successor would follow of course unless the default was shown to have been committed before the second appointment, the presumption being that the officer has done his duty. And the court has held that in order to render the sureties liable on the bond as special commissioner, it is not necessary that the clerk should be appointed or styled special commissioner. It is enough that the clerk was ordered to perform the duties, and that the duties were not those pertaining to the office of clerk proper. The law would refer the acts to the office whose duties require their performance: *Bowen* v. *Evans*,

---

---

1 Lea, 107; *Buford* v. *Cox*, 3 Lea, 518. And all the cases decided under the Code take for granted that the successor in office would receive funds from his predecessor in the character in which the predecessor held them. It must be so on principle, for otherwise he would have no authority to receive the funds at all. He takes necessarily as successor in function and office. And, as said in *Buford* v. *Cox*, where money or property comes to the hands of the incumbent, by virtue of his official position, otherwise than as commissioner or receiver, his sureties on his bond as clerk would be liable.

All of the funds in controversy were derived from sales of property, without any trust being attached to them by any order of court. They were therefore held by Cole as special commissioner. They fell within the condition of the bond given as special commissioner and receiver, and must be charged to the sureties accordingly.

One other exception of the sureties is to that part of the report of the Referees which finds that the decree below on the office bond, which was for the full penalty, should bear interest. But this court, upon the affirmance of a money decree in an equity cause, has always allowed interest thereon: *Trainer* v. *Skein*, 10 Yer., 369. And it is now so provided by statute, Code, sec. 3165. The interest is on the decree and not on the penalty. And it can make no difference which party appeals, the interest being an incident to the affirmance.

The complainant has excepted to the report of the

The State *v.* Cole.

Referees that it gives a preference to the sureties under the assignment made by Cole of his fees. But the assignment is primarily for their indemnity, and the sureties are therefore entitled to the preference.

The exceptions to the report of the Referees will be disallowed, the chancellor's decree modified in accordance with the report and this opinion, and a decree entered accordingly, with the costs of the cause against the defendant.

FREEMAN, J., delivered the following dissenting opinion:

By Code, section 326, every clerk of the court, before entering upon the duties of his office shall enter into bond, with sufficient surety to the satisfaction of his court, in the sum of $10,000, payable to the State, and conditioned for the safe-keeping of the records, and for the faithful discharge of the duties of his office. This is imperative, as well as the bond required by the next section, as to taxes on suits, fines and forfeitures. Section 328 is not so, however, but is: "The several courts may also require their clerks to give bond, with surety, in such sum as the court may deem sufficient, to cover property or funds which may at any time come to the hands of such clerks, as special commissioners or receivers by appointment of the court or any judge thereof." Section 329: "The failure of any clerk to execute the special bond provided for in the last section shall not subject him to any penalty, but the court may confide the particular

business to such other person as will give the required security, and in the absence of such bond the clerk and his sureties will be liable on the regular official bond for all property and money, with which such clerk may be properly chargeable, as special commissioner or receiver." By section 330, the court is authorized "to require special bonds to meet particular exigences and in a suitable penalty, whenever in its judgment, the interest of suitors renders it necessary, subject to the provision of the last preceding section." That is, if no special bond is given, the liability shall be on ordinary official bond.

In this case considerable sums of money were received by Cole as clerk from the two former clerks, Alston and Stewart. which had been received by them as commissioners for sale of land, or as clerks, acting in this capacity. A larger sum was in his hands at his reappointment, received by himself from like sources during his previous term, and upwards of $6,000 was collected by him during his second term on sales made during former term. It may be assumed there was no default as to this during the former term, and it so remained in his hands until after his reappointment succeeding himself, and is the same so far as the question for decision is concerned, as if he has succeeded another and different party.

The question is, whether these funds thus coming to his hands, and not the result of sales made by him after the new term commenced, shall be chargeable on the general clerk's bond, or on the new bond given by him as special commissioner, required by section 328?

The State *v.* Cole.

I think these funds are to be charged under the general official bond, and cannot be charged against the parties to the second, or special commissioner's bond. The fact that the office bond is only for $10,000, and the commissioner's bond for $30,000, I think has no bearing on the solution of this question. The court has ample power to protect suitors if deemed necessary, under section 330, as to all funds coming into his hands as these funds came. If such bond had been taken, that is a special one for moneys received from predecessors, then there could be no question the sureties on the commissioner's bond would not have been also liable on their bond. But it is expressly provided by the last clause of section 330, such a bond as is authorized, shall be "subject to the provison of the last preceding section." This evidently can only refer to the provision following the one providing that a failure to execute a commissioner's bond, shall not make a forfeiture of office, and the court may confide the particular business, that is sales, or either as commissioner or receiver, to any other person who will give the bond, and then adds: "And in the absence of such special bond, the clerk and his sureties will be liable on the regular official bond for all property or money with which such clerk may be properly chargeable as special commissioner or receiver."

This means in case he shall act as such commissioner or receiver, and funds come to his hands, no special bond having been given, then he and sureties will be liable for such funds on general bond; so it follows in case of failure to exact a special bond, under

section 330 this provision comes into play, and the general bond covers it. I can see no other meaning ·or application to this clause, I think the same result would follow from our decisions, however, and this, ·only a declaration in plain terms, of what was the law.

I have carefully examined all our cases cited by my brother, Cooper, and while they do hold the payment of the funds in the hands of a predecessor into the hands of his successor, will discharge the sureties, and that if the funds are in the hands of the clerk, and he is his own successor, no default having oc-·curred, the sureties for the second term are liable for .such funds, still none of them have undertaken to fix this liability in cases of funds in his hands as commissioner, on the second commissioner's bond, in prefer-·ence to the general official bond. In fact, I think the principle announced, and the theory on which the cases go, require a different holding. In none of the ·cases cited was this question made.

The old case of *Waters* v. *Carroll*, 9 Yer., 102, held that the sureties were liable for funds received ·by the clerk from a former receiver, he having himself been appointed receiver, and , ordered to loan the money out. It was held to be in his hands as clerk, because he had done no act in obedience to the order, and had assumed no control over it as receiver. The theory of this holding is, that the duties of clerk and receiver are distinct, and farther, that where money is paid over by a receiver to a clerk, he receives and holds it as clerk, until he takes it under an order of ·court in a different capacity.

The case of *Williams* v. *Bowman*, 3 Head, 677, held that a clerk under a bond under act of 1849, conditioned "to well and faithfully account for and pay over all sums of money that shall come to his hands as special commissioner, etc., who collected the money after expiration of his term of office was responsible, with his sureties for the money." The theory of this opinion contravenes, as I think, definitely the view, that sureties on a second bond as commissioner, would be liable to the execution of the sureties on the general bond, if the money had been paid over to his successor. It is, that the special commissioner acts in any case, not as clerk but by virtue of his appointment to make the sale, as would be the case if he were to act as receiver of property or funds in court, or to be brought in. Judge McKinney says, page 582, as to the office of commissioner, "its duties do not appertain to the proper functions of the office of clerk. The duration of the appointment is not limited by law. This is left to the discretion of the court, according to the exigencies of the various cases that may arise." Again, page 583, as to whether or not handing the notes over to his successor would have discharged the commissioner, he says it was unnecessary to decide, as he did not do so, but he adds, "if he had done so, the court might doubtless have appointed his successor to have finished the execution of the trust." While nothing is decided on the question now under discussion, what is said goes definitely on the theory that the clerk is not special commissioner in any case, except where he is appointed as such,

25—VOL. 13.

or where he is appointed by the court to perform the duties of such a commissioner, without being in terms named such, as said by Judge Cooper in *Buford* v. *Cox*, 3 Lea, 523. It is enough that the clerk and master was ordered to perform the duties, and that the duties were not then pertaining to the office of clerk and master proper. "This would make him, as to these duties special commissioner or receiver."

Without going over the cases cited, *Bowen* v. *Evans*, 1 Lea, 107; *Smalling* v. *King*, 5 Lea, 585; *Yoakley* v. *King*, 10 Lea, 67, 73, it suffices for this argument, to say, while it. is held that payment to successor, having the funds in hand without default, makes the sureties on clerk's bond liable for these funds, the question whether this liability shall be fixed on the sureties on second bond as commissioner, over the sureties on the general official bond, is not raised, discussed or decided. By Code, section 805, it is now provided in all cases where an office is vacated, "all books and papers, property and money belonging or appertaining to the office, shall be handed over to the qualified successor." I concede too, that if the successor receive it in the capacity of commissioner, than by virtue of section 771, *et seq.*, the bond would cover it. But the question is, does he receive this money as commissioner under the fair construction of the Code, or in accord with the whole theory of the question as found in our decisions? I think not, but that he receives the money *virtute officio*, by virtue of his official position, which is that of clerk. To this office is added, by our law, a bond to be given as such officer, to cover

all acts as special commissioner or receiver, that he may be ordered or called on to perform during his term of office. But an appointment by the court or an order to perform the function of commissioner or receiver, or the actual performance of these duties, is absolutely necessary to create the liability. In case no such order, or the receipt of the money is not while acting in such capacity under such an order, then it is received by him as clerk, and the liability is solely on his general bond, unless a special bond has been taken under section 330. This is in accord with all our cases, from the 9th Yerger case down to the present, and contravenes none of them.

The case of *Waters* v. *Carroll* presents the point clearly, for there the clerk received the money from a former receiver, and was by the court appointed receiver to loan out the fund. He failed to loan it, and his sureties as clerk were held liable because he did no act under the appointment as receiver. So in this case, he receives the money, or it may be property, as clerk by law, by virtue of his appointment or election to his office, and holds it in that capacity, until he is directed to do some act in the other capacity of commissioner or receiver, or does such an act, and then all such acts are covered by the commissioner's bond. The opposite conclusion can only be reached by holding that he becomes an official commissioner and receiver for the term of his office, by virtue of appointment as clerk or clerk and master; and this is rebutted by all the provisions cited. The language of section 328 is not impera-

tive that such a bond shall be taken, and in connection with section 329, leaves it clearly discretionary with the court whether it shall be done at all. That section provides for the appointment of any other party to perform these duties, thus indicating the bond is for acts to be performed in the future.

Suppose the clerk had given no special commissioner's bond, and the money had been paid over by Stewart and Alston to him, would he not have received it as clerk, and been liable on general bond? No one could doubt this. It is equally clear under section 805, as clerk he was entitled to demand and receive it, and as he could be clerk without a commissioner's bond at all, it follows that by law. the one party was bound to pay, and the other entitled to receive as clerk. It might be he could not have received it as commissioner, because it may be, another may have been appointed to perform that function in that office.

This theory is further supported by the language of section 328, that the bond shall be taken "to cover property or funds which may at any time come to the hands of such clerk as special commissioner or receiver, *by appointment* of the court or any judge thereof. If the statute had stopped at the words "come to the hands of the clerk as special commissioner," etc., it might have served better to have supported the conclusion sought to be maintained, but when it is added "as special commissioner or receiver by *appointment* of the court, it is seen the liability does not attach by reason of his office only, but to

The State *v.* Cole.

raise it there must be a special appointment by the court, in the sense of. our decisions, and then all moneys or properties received under such special appointment, either as commissioner or receiver, are covered by the, bond required.

In accord with this theory, it was held in the case of. *Tanner* v. *Dancy*, 4 Heis., 483–4–5, that on failure to pay over funds in his hands to the successor, the former clerk was liable to judgment on motion, or even by the action of the court alone, the judgment to be in the name of the clerk and master. Judge Nicholson, in delivering the opinion, says, page 485: "The object of the proceeding is to have the funds which the former clerk and master was withholding from the office, paid into the office where they belonged. It was therefore proper to enter up judgment in the name of the clerk and master *who* was the rightful custodian of the funds." This was a case where the fund was in the hands of the former clerk as commissioner, it being proceeds of a sale of land ordered to be sold by the court.

For these reasons, I think, all funds not derived from sales, or from some act performed under appointment of the court, or in performance of duties of commissioners during the official term, are covered by the official bond, or may be covered by a special bond under section .330, but can never be held to be covered by the special commissioner's bond under the facts in this case. It may turn out a hardship in this particular case, but in general the bonds will be found sufficient—at any rate the law gives ample means

of securing all parties under section 330, and if more is required, it is for the Legislature to apply the remedy, not this court.

The principle of this opinion excludes the $7,000 and upwards item, the first in the account, where the money had been collected during the first term, with the other items received from Stewart and Alston.

It does not exclude the last item of upwards of $6,000, where the sales had been made before reappointment, but money collected afterwards. This act of collection of sale money is the act of a special commissioner, and may well be referred to that character, he collecting it necessarily either in such capacity, and probably under decrees of the court in most cases. It is like the case in 9th Yerger, where clerk was ordered to loan out the money as receiver. If he had done any act under that order he would have been responsible on his bond as receiver, and not as clerk: He could not in my judgment receive money from a former clerk or term except in his character of clerk. and this is either covered by his general bond, or may be by a special bond under section 330.